**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2684-19

K.L.,[1]

     Plaintiff-Respondent,

v.

A.L.,

     Defendant-Appellant.

_____

     Submitted April 21, 2021 – Decided May 18, 2021

     Before Judges Geiger and Mitterhoff.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1473-15.

     LaRocca Hornik Rosen Greenberg & Crupi, LLC, attorneys for appellant (Frank J. LaRocca, of counsel and on the brief; Ronald H. Carlin and Elissa A. Perkins, on the brief).

     Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of plaintiff's medical records.

In this post-judgment matrimonial matter, defendant A.L. appeals from a January 22, 2020 order denying her motion for reconsideration of the judge's October 30, 2019 order. The initial order found plaintiff's deteriorating mental state and recent psychiatric commitment did not constitute changed circumstances warranting modification of the couple's custody and visitation agreement pending review of plaintiff's then-current mental health status. Having carefully reviewed the record, we conclude the judge's denial of the application was a mistaken exercise of her discretion. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

We discern the following facts from the record. Defendant and plaintiff K.L. were married in May 2001 and have three children together. They were divorced in October 2016. The final judgment of divorce incorporated a martial settlement agreement (MSA). The MSA provided that the parents would share joint legal custody of the three children and that defendant would be the parent of primary residence. The MSA also established detailed parenting time arrangements and financial support obligations. The MSA expressly required that plaintiff "take his prescription medication daily and maintain his regular regime of therapy with his psychiatrist and any other medical health professional in compliance with his treatment for bi-polar disorder." Under the MSA, the

A-2684-19

parties bore their own costs and attorney's fees unless either party "willfully" failed to abide by the terms of the agreement, in which case "the defaulting party [would] indemnify the other for all reasonable expenses and costs, including attorneys' fees incurred in successfully enforcing" the agreement.

On July 18, 2019, plaintiff filed a motion seeking, among other things, to be named the parent of primary residence and an award of child support or, in the alternative, the parties' oldest child be emancipated and his child support obligations reduced. On July 30, 2019, before the return date of the motion, defendant filed an emergent order to show cause (OTSC) requesting that plaintiff's visitation be supervised until he provided copies of his psychiatric treatment records. She alleged that plaintiff, who is schizophrenic and bipolar, was non-compliant with his medications and was becoming unstable. The OTSC was not entertained, and no order was issued.

On August 2, 2019, defendant filed a cross-motion requesting that plaintiff's parenting time be supervised until he submitted to a psychiatric evaluation and was determined to be stable enough to care for the children. Defendant also sought sole legal custody and attorney's fees for having to respond to plaintiff's initial application. In her certification, defendant averred

that when plaintiff was non-compliant with his medication, he would exhibit "manic" behavior and engage in "violent episodes."

On September 9, 2019, before the motions were heard, plaintiff was involuntarily committed to Monmouth Medical Center.[2] The screening document, authored by a mental health professional, revealed that he was displaying increasingly "erratic" and "manic" behavior. The screening document also indicated that he was non-compliant with his medication and was dangerous to others because he had a "history of threatening his ex-wife." During his commitment, staff overheard plaintiff instruct his wife to "kidnap" the parties' youngest child and take her out of the state.

On September 13, 2019, before plaintiff was released from Monmouth Medical Center, defendant obtained a temporary restraining order (TRO) against him. Defendant alleged that, shortly before his involuntary commitment, plaintiff showed up to her residence to pick up the children. When defendant went outside to talk with him, plaintiff began cursing at her and charging towards her.

On or about September 20, 2019, defendant filed a supplemental certification. Defendant emphasized that plaintiff's mental health condition was

---

[2] Plaintiff was previously committed to Monmouth Medical Center in 2010.

deteriorating, as evidenced by his "irrational" and, at times, "violent" behavior which resulted in his involuntary commitment. She cited the fact that plaintiff bit his ex-girlfriend's finger,[3] and that defendant obtained a TRO against plaintiff days before.

On October 30, 2019, following oral argument, the judge denied both plaintiff and defendant's requests. The judge found that there was no "prima facie change in circumstances" that would warrant altering the custody arrangement between the parties. The judge also determined that there was no evidence demonstrating that plaintiff was "a danger to the children" sufficient to require supervised visitation.

On November 21, 2019, defendant filed a pro se motion for reconsideration of that decision. In her certification, defendant argued that while plaintiff was discharged from Monmouth Medical Center, there was no evidence that his "mental condition has resolved or that he has become compliant with his medication and treatment." Defendant contended that the judge overlooked evidence, including the fact that plaintiff admitted to biting his ex-girlfriend's finger.

---

[3] On June 24, 2019, plaintiff sent the judge a letter indicating that his ex-girlfriend had recently obtained a restraining order against him after he bit her finger.

A-2684-19

The next day, Judge Stacey Adams granted defendant a final restraining order against defendant. Judge Adams, in support of her decision, referenced defendant's manic behavior and the fact that he "bit off" his ex-girlfriend's finger.

On January 22, 2020, after oral argument, the judge issued an order and written opinion denying defendant's motion for reconsideration. The judge again determined that "neither party has demonstrated a requisite change in circumstance enough to change what they both, a few years ago, negotiated and swore was in the children's best interest." The judge rejected defendant's argument that plaintiff's recent involuntary commitment and the TRO established a showing of changed circumstances. Defendant appeals that decision.

While this appeal was pending, plaintiff took their youngest child, without defendant's consent and in violation of a previous court order, out of this state. Plaintiff attempted to drive to Arizona with the child in his three-wheeled motorcycle. As a result, the child suffered severe sunburn on her face and upper body. On September 11, 2020, the judge issued an order granting temporary legal and residential custody to defendant, suspending plaintiff's parenting time, and requiring him to undergo an independent psychological evaluation.

A-2684-19

Our scope of review of Family Part orders is limited, as we accord deference to the family courts due to their "special jurisdiction and expertise" in family law matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). Therefore, the court's findings are binding so long as its determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). A "trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Our standard of review on a motion for reconsideration is deferential. "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into
> that narrow corridor in which either 1) the [c]ourt has

7

expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.

[Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

Thus, we will not disturb a trial judge's denial of a motion for reconsideration absent "a clear abuse of discretion." Pitney Bowes Bank, Inc., 440 N.J. Super. at 382 (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

It is well-settled that a party seeking modification of an existing custody or parenting time arrangement must demonstrate a change in circumstances affecting the welfare of the children. Finamore v. Aronson, 382 N.J. Super. 514, 522-23 (App. Div. 2006); Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). To determine whether the requisite changed circumstances exist, the judge must consider the circumstances that existed at the time the current order was entered. Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958). Once the moving party makes a prima facie showing of changed circumstances, only then is the movant entitled to "a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing . . . order." Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009).

We acknowledge that by virtue of the judge's September 11, 2020 order, defendant has now received the relief she sought in her initial application and on the motion for reconsideration, rendering aspects of this matter moot. See Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006). We note, however, that defendant also sought attorney's fees, necessitating a finding that she prevailed.

We conclude that the judge's finding that defendant failed to establish a prima facie showing of changed circumstances was not supported by the record and requires reversal. The judge ignored evidence that plaintiff was becoming increasingly unstable, culminating in his involuntary commitment prior to the return date of the motions. Notwithstanding the fact that plaintiff had a history of mental illness that was known to defendant, his last commitment was almost a decade before the recent involuntary commitment to Monmouth Medical Center. That he was released prior to the return date of the motion for reconsideration should not have been sufficient to alleviate concerns about whether he would comply with his medication regime and treatment after discharge. The judge was also made aware of defendant's bizarre assault on his ex-girlfriend. These facts, when taken together, were sufficient to establish a prima face case of change in circumstances that warranted the requested relief.

A-2684-19

The judge's finding that none of these circumstances posed a risk to the children is baffling. With no protections in place, plaintiff took one of the children out of state without defendant's consent and in contravention of a court order, intending to ride to Arizona in a three-wheeled motorcycle. This resulted in severe burns to the child's face and upper body.

Under these facts, we are constrained to reverse, and we remand the matter to address whether defendant is entitled to attorney's fees. Apparently, defendant was at times represented by counsel, and at other times pro se. We note that defendant is not entitled attorney's fees for her own efforts in defending and litigating the case. See Segal v. Lynch, 211 N.J. 230, 260-64 (2012). To the extent she incurred fees through retained counsel, the judge on remand will consider her application.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION